United States District Court
Middle District of Florida
Jacksonville Division

**DURHAM COMMERCIAL CAPITAL CORP.,**

   *Plaintiff,*

V.              **NO. 3:14-CV-877-J-34PDB**

**SELECT PORTFOLIO SERVICING, INC.,**

   *Defendant.*

---

## Order Denying Defendant's Motion for Sanctions

Before the Court is Select Portfolio Servicing, Inc.'s (SPS's) motion for sanctions under Federal Rule of Civil Procedure 37(c)(1). Doc. 158. Durham Commercial Capital Corp. opposes the motion. Doc. 168. SPS asks the Court to prevent Durham from using recently disclosed documents at trial, strike the complaint, or limit Durham to presenting evidence "in accordance with the express dollar amount and payment date range" in the complaint and initial disclosures. Doc. 158 at 12–19. The Court heard argument on the motion on April 17. Doc. 171.

### Background[1]

Durham filed the complaint in July 2014. Doc. 1. In the sole claim against SPS, it alleges SPS knowingly and wrongfully paid the law firm Connolly, Geaney, Ablitt,

---

[1]The Court incorporates the discussion of the background of this case in the Court's previous orders, Docs. 119, 143, and includes only the background necessary to decide SPS's motion for sanctions.

& Willard, P.C. ("CGAW"), instead of it on certain accounts receivable Durham had purchased from CGAW.[2] Doc. 1 ¶¶ 21–33.

In December 2014, Durham served initial disclosures identifying documents it may rely on: (1) the factoring agreement between Durham and CGAW; (2) the notice of assignment Durham had sent SPS; (3) a July 2014 letter from Durham's counsel to SPS; (4) checks from SPS to CGAW (or its predecessor) and Durham; (5) invoices from CGAW to SPS; (6) correspondence between CGAW and Durham regarding a draft amendment to the factoring agreement; (7) Durham's business records of amounts SPS paid to Durham; and (8) records of amounts SPS paid to CGAW "over [the] Notice of Assignment." Doc. 144-1 at 2–3. Under a section titled "Computation of damages," Durham stated:

> Between December 4, 2013[,] and April 21, 2014, [SPS] wrongfully paid to [CGAW], rather than paying Durham, monies to satisfy certain Accounts purchased by Durham, totaling $1,104,086.23 (the "Wrongfully Paid Accounts"). [SPS] owes Durham and Durham has suffered damages in the sum of $1,104,086.23 on the Wrongfully Paid Accounts exclusive of prejudgment interest.

Doc. 144-1 at 3.

During discovery, SPS served interrogatories and requests for production seeking a list of accounts CGAW had assigned to Durham, evidence relating to accounts Durham had purchased from CGAW, evidence relating to accounts CGAW had repurchased from Durham, and evidence supporting Durham's damages calculation. Doc. 158 at 4–6. To most, Durham responded the evidence sought was irrelevant; to requests for evidence supporting its damages calculations, it responded,

---

[2]Durham also alleges SPS "currently owes $329,619.18 on additional accounts … for which [it] has not remitted payment." Doc. 1 ¶¶ 27, 29–31, 33. Durham has since stated it is not pursuing damages for unpaid accounts in light of CGAW's pending bankruptcy proceedings. *See* Doc. 103 at 5 n.2; Doc. 127 at 6 n.3; Doc. 144-1 at 3 n.1.

> Durham's damages really require[ ] no technical calculation per se. The damages or harm suffered by Durham is merely based on total amount of payments that [SPS] made for invoices issued by [CGAW] that were paid in violation of the Notice of Assignment Agreement between [SPS] and Durham. … The backup information sought would be the [CGAW] bank account statements evidencing deposits made.

Doc. 158 at 4–6. In July 2016, SPS's counsel informally asked Durham to withdraw its objection and produce responsive material. Durham did not produce additional documents, and SPS filed no motion to compel their production.

In October 2016, in ruling on the parties' summary-judgment motions, the Court concluded Durham had to present evidence of assignment of specific accounts through purchase from CGAW. Doc. 119 at 38–39 & n.28. In late January 2017, following Durham's motion seeking clarification, the Court reiterated that Durham's claim as pled was based on accounts it had purchased from CGAW. Doc. 143 at 3–5.

In early February 2017, Durham served amended initial disclosures identifying the same categories of documents it had identified in the original disclosures but amending the section titled "Computation of damages" to read:

> The damages or harm suffered by Durham is the total amount of payments that [SPS] made to [CGAW] in violation of the Notice of Assignment issued by Durham to [SPS], for invoices issued by [CGAW] to [SPS] … (the "Misdirected Payments"), which total approximately more than $1,200,000.00. [SPS] owes Durham and Durham has suffered damages in the sum of approximately $1,200,000.00, exclusive of prejudgment interest.

Doc. 146-1 at 3–4. Durham filed a motion to amend the complaint to clarify it sought to recover payments SPS had made to CGAW both on accounts Durham had purchased and on accounts in which it had a security interest. Doc. 145. The Court conducted a hearing on that and other motions. Doc. 148 (minutes), Doc. 150 (transcript). Durham withdrew its motion to amend the complaint, and its counsel stated it was ready and willing to go to trial on the claim as pled. Doc. 150 at 37–40.

On March 7, 2017, Durham produced 2060 pages of previously unproduced documents, many of which were redacted and marked "Irrelevant." Doc. 158 at 2. On March 15, it replaced that production with unredacted documents. Doc. 158 at 2. The production included (1) a 147-page spreadsheet purportedly showing "every single invoice purchased by Durham from CGAW, every payment Durham received from SPS[,] and all accounts Durham purchased from CGAW that Durham did not receive payment from SPS [on]," *see* Doc. 168 at 17; (2) "rebate statements" showing rebates Durham provided back to CGAW based on the difference between the less-than-face-value amount Durham had advanced to purchase particular accounts and the amount it eventually collected on those accounts; and (3) "account purchase addenda" identifying invoices CGAW had sought to sell to Durham and the amounts it would be advanced for such proposed sales.

SPS's motion for sanctions followed. Doc. 158.

## Motion, Response, & Oral Argument

SPS argues Durham should not be allowed to rely on the recently produced documents. Doc. 158 at 2. It observes discovery closed more than a year earlier, and it cannot conduct discovery on the documents or seek leave to file an amended answer. Doc. 158 at 2. It argues the documents should have been identified in Durham's initial disclosures and were responsive to requests for production and interrogatories. Doc. 158 at 4–6, 12–13. It asserts Durham never indicated it had any documents showing account purchases despite opportunities to do so in its initial and renewed summary-judgment motions and trial brief; in the joint pretrial statement; in response to SPS's renewed summary-judgment motion and motion for judgment on the pleadings; or at the February 2017 hearing. Doc. 158 at 7–11. It argues Durham was on notice at least as of October 2016 (when the Court entered the summary-judgment order) that it needed to show proof of purchase but waited another 142 days to produce documents. Doc. 158 at 15. It argues Durham's failure to produce the documents sooner is not harmless because Durham had never indicated its intent to rely on them, and the

production harms SPS "in its defense of this matter and in its own preparation for trial." Doc. 158 at 16–17. It argues that, even if the Court allows Durham to use some of the documents, it should be limited to the damages and time period alleged in the complaint and initial disclosures. Doc. 158 at 17–19.

Durham responds it properly objected to the identified discovery requests, and SPS never moved to compel better responses. Doc. 168 at 8–9. It responds SPS's failure to move to compel suggests "SPS concurred that discovery pertaining to purchased accounts was outside the scope of discovery." Doc. 168 at 9. It responds the "harsh" sanctions authorized under Rule 37 are unwarranted because SPS waited "until the eve of trial" to address Durham's perceived failure to offer evidence supporting damages; its failure to provide the documents sooner was substantially justified because it "had previously believed, and SPS made no argument otherwise, that based on the legal issues actually litigated by the parties the [d]ocuments were not relevant"; it only learned after the Court's January order that the documents relating to account purchases would relate to its claim as pled; its failure to supplement its responses and disclosures was harmless "because SPS has had ample notice throughout the case of the basis for and amount of damages Durham is seeking …[,] and the damages do not require any complex calculations"; since the beginning of the case, SPS has known Durham claims entitlement to payment on all accounts SPS paid to CGAW after receiving the notice of assignment; the documents do not reflect a new category of damages; and it had offered its president for an additional corporate-representative deposition, but SPS declined. Doc. 168 at 9–18. It seeks sanctions for having to respond to the motion, arguing the motion is "unjustified" and "merely a disguised attempt by SPS to eviscerate the operation of Rule 15(b), and prevent Durham from receiving a fair trial." Doc. 168 at 19–20.

At the April 17 hearing, SPS's counsel observed she had emailed Durham's counsel in July 2016 to ask about Durham's discovery objections, and Durham's counsel responded that discovery had closed and it had no obligation to produce

anything. She argued Durham's assertion that the required proof to support its claim was unclear until the January order is "absurd." She argued if the Court excludes the newly produced documents, the case is over unless the Court permits Durham to amend the complaint at trial by introducing evidence supporting an alternative theory of recovery. She argued if the Court permits Durham to use the evidence and reopens discovery, SPS would move to amend the answer and for summary judgment because she believes the newly produced documents remain insufficient to support Durham's claim as pled. She conceded SPS would suffer no prejudice from the production if it were permitted to take discovery on those documents and amend its answer.

Durham's counsel responded the case they believed they had been litigating from the outset was a claim seeking payment on all accounts on which SPS had paid CGAW instead of Durham. He asserted they thought their theory was clear based on the complaint allegations and the attachment of the notice of assignment and factoring agreement to the complaint, and he believed SPS's former counsel understood and agreed to the scope of the claim. He explained they had misunderstood the Court's summary-judgment order as erroneously ruling, as a matter of law, that Durham had to have purchased accounts to be an assignee entitled to payment under Uniform Commercial Code section 9-406. He asserted the Court's January order clarifying that the Court had found a pleading deficiency came as a "complete shock" to counsel. He asserted Durham intended to seek leave to amend the complaint at trial by introducing evidence of its entitlement to payment based on a security interest in all accounts and argued the newly produced documents are "backup" evidence in case the Court does not allow amendment.

## Law

Several procedural rules govern.

Federal Rule of Civil Procedure 1 provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

Federal Rule of Civil Procedure 26 provides general rules addressing the scope of discovery and parties' obligations. Subdivision (a) provides that a party "must, without awaiting a discovery request, provide to the other parties" copies or descriptions of documents it has that it "may use to support its claims or defenses" and "a computation of each category of damages claimed" with accompanying evidence on which each computation is based. Fed. R. Civ. P. 26(a)(1)(A)(ii)–(iii).

Subdivision (b) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Subdivision (e) provides,

A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Federal Rule of Civil Procedure 33 provides that a party may serve an interrogatory on another party "relat[ing] to any matter that may be inquired into under Rule 26(b)," and "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(a)(2), (b)(3). "The grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4).

Federal Rule of Civil Procedure 34 provides that a party "may serve on any other party a request within the scope of Rule 26(b) … to produce … any designated documents or electronically stored information." Fed. R. Civ. P. 34(a)(1). Any response "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

Federal Rule of Civil Procedure 37(c)(1) provides,

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).[3]

---

[3] The permissible sanctions listed in Rule 37(b)(2)(A)(i) through (vi) are:

Fed. R. Civ. P. 37(c)(1). In deciding whether a failure to comply with Rule 26(a) or (e) was substantially justified or is harmless, a court must consider the non-disclosing party's explanation, the importance of the information, and any prejudice to the opposing party if the information were admitted at trial. *See Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008). "[T]he first and third factors, together, can outweigh the second." *Id.*

## Analysis[4]

Sanctions against Durham are unwarranted.

Durham did not violate Rule 26(e) because it only learned of the incompleteness of its disclosures and responses in late January of this year when counsel realized the claim as pled was based only on purchased accounts. *See* Fed. R. Civ. P. 26(e)(1)(A) (quoted).

Durham explained its theory of the case has always been that it may recover all payments SPS made to CGAW after receiving from Durham the notice of

---

(i)      directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part; [or]

(vi)    rendering a default judgment against the disobedient party.

[4]In this order, the Court is not deciding whether amendment of Durham's pleading under Federal Rule of Civil Procedure 15(b) is warranted or the admissibility of any evidence under the Federal Rules of Evidence. The Court is deciding only whether sanctions against Durham are warranted based on the timing of its latest document production.

assignment whether based on purchases or a security interest. That perspective is apparent from its consistent position throughout the litigation that, to prove its claim, it needed to present evidence only of the notice of assignment and SPS's payments to CGAW despite that notice. Its initial disclosures and responses to discovery requests reflect that theory. SPS waited until after the discovery deadline to approach Durham's counsel about its objection and never sought Court intervention to compel better responses. Under those circumstances, Durham did not unreasonably withhold production of the documents before the Court's order on summary judgment. At the April 17 hearing, SPS's counsel appeared to concede that point.

After summary judgment, Durham arguably was on notice it would need to present evidence of account purchases to prove its claim as pled, so it arguably should have known it would need to produce the documents. But its assertion it had misread the Court's order as making a legal error—rather than identifying a pleading error— is plausible and explains why it failed to recognize the need for additional proof to support its claim. Accepting that assertion as true in light of counsel's displayed sincerity at the April 17 hearing, the proper date for determining whether Durham timely supplemented its disclosures and responses is January 30, 2017, when Durham learned documents showing account purchases might be necessary to prove its claim as pled.

Durham's amended initial disclosures, served on February 7, did not indicate it had additional documents to produce. *See* Doc. 146-1 at 3–4. Nevertheless, it apparently immediately began the process of compiling the new documents for production and offered Durham corporate representative Craig McGrain for an additional Federal Rule of Civil Procedure 30(b)(6) deposition (albeit without an indication that additional documents were forthcoming), which SPS declined. Though Durham could have provided advance notice of its intent to produce new documents, its production just over a month after it first realized the need to supplement its disclosures and responses was not so delayed as to warrant sanctions.

Even if Durham failed to timely supplement its disclosures and responses, any failure is harmless if SPS may conduct discovery on the recently produced documents and raise any defenses or arguments it might have based on them. At the April 17 hearing, Durham's counsel represented the production was every available document related to purchased accounts; the only additional discovery necessary would be an additional corporate-representative deposition to allow SPS's counsel to determine what the documents mean. SPS should have that opportunity.

At the April 17 hearing, SPS's counsel acknowledged the opportunity for discovery might lessen the harm of the timing of the production but contended any new discovery, by itself, would be of little value without an opportunity to amend the answer. Amending the answer is unnecessary; under the circumstances, Durham cannot argue SPS waived any defense that became apparent only from the recently produced documents.

SPS's counsel also indicated it might want an opportunity to file a renewed motion for summary judgment. SPS can argue at trial, through a motion for judgment as a matter of law, that Durham's evidence of purchase is insufficient. SPS will not unduly prejudiced by being required to present its argument in that manner as opposed to through another round of dispositive motions that may or may not dispose of or narrow the issues, and both parties will benefit from a more expeditious resolution.

To the extent SPS asks the Court to preclude Durham from introducing evidence of damages either in excess of the amount identified in its initial disclosures or from before the time identified in the initial disclosures, it has shown no basis for excluding that evidence. Durham correctly observes some of the cases on which SPS relies addressed distinct categories of damages that the plaintiff had failed to identify. *See, e,g.*, *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010); *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203, 1211–13 (11th Cir. 2010). Here, all damages are in the same category (wrongfully paid

accounts); the only differences are the amount and time frame, which Durham changed (or, as to the time frame, omitted) in amending its initial disclosures in February. *See* Doc. 146-1 at 3–4.

SPS has not shown Durham had any obligation to amend its initial disclosures to reflect the higher damages amount given that that amount had otherwise been made known to SPS during and after discovery. In its original and amended summary-judgment motions, Durham argued SPS had wrongfully paid CGAW the "approximate amount of $1,200,000.00." Doc. 25 at 6, 12; Doc. 64 at 23. It relied on testimony from SPS's Chief Financial Officer, Peter Justin Crowley, for that figure. *See* Doc. 25 at 6, 12; Doc. 64 at 23–24. Its amended initial disclosures reflect the same information. *See* Doc. 146-1 at 3–4. And in the joint pretrial statement filed in June 2016, the parties stated Durham claimed $1,331,000 in damages and listed as an admitted fact that SPS had paid CGAW that amount during the relevant time period.[5] *See* Doc. 103 at 2, 5, 7. SPS was on notice that Durham intended to claim entitlement to damages exceeding the amount alleged and originally disclosed, and it cannot now claim surprise and prejudice simply because Durham has produced documents potentially corroborating that amount.

On documents purportedly "fall[ing] well outside the specific date range" alleged in the complaint and identified in initial disclosures, with no indication of what those documents are or whether they relate to Durham's estimated damages amount, the Court cannot conclude their exclusion is warranted because the documents could relate to Durham's claim for damages arising within the disclosed period. For example, at the April 17 hearing, SPS's counsel provided a sample "account purchase addendum" from the March 7 production dated October 9, 2013— before the alleged and disclosed time frame of wrongful payments, and so presumably

---

[5]The amended pretrial statement, filed the day after Durham produced the documents at issue, also lists Durham's claimed damages as $1,331,000 but omits SPS's payment of that amount to CGAW from the section listing admitted facts. *See* Doc. 154 at 2, 4, 10–11.

among the documents SPS seeks to exclude. But to the extent Durham intends to argue the document shows it purchased particular accounts, use of that document would not be inconsistent with the time frame alleged and disclosed, and exclusion would be unwarranted. A general assertion that some documents are from outside the relevant time frame, without more context, is insufficient.

The Court **denies** SPS's motion for sanctions, Doc. 158. By **May 19, 2017**, Durham must produce a corporate representative to testify about the documents. To give the parties sufficient time to prepare for trial after the additional discovery, the Court **cancels** the final pretrial conference scheduled for May 1, 2017, and **removes** the case from the May trial calendar. The Court will reschedule the conference and set the case for trial by further order upon consideration of SPS's motion to stay, Doc. 176, filed earlier today.

Although the Court denies SPS's motion, its position was substantially justified. Durham's assertion that SPS is seeking to "eviscerate the operation of Rule 15(b)," *see* Doc. 168 at 19–20, is unpersuasive; whether Durham should be allowed to amend the complaint differs from whether Durham should be allowed to introduce only recently produced evidence relevant to the claim as currently pled. The Court **denies** Durham's request for sanctions, Doc. 168 at 20.

**Ordered** in Jacksonville, Florida, on April 28, 2017.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      Counsel of record