**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DURHAM COMMERCIAL CAPITAL CORP.,

               Plaintiff,

v.                                  Case No. 3:14-cv-877-J-34PDB

SELECT PORTFOLIO SERVICING, INC.,

               Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Plaintiff Durham Commercial Capital Corp.'s Renewed Motion for Leave to Supplement and Amend the Complaint (Doc. 194; Motion), filed on June 22, 2017. Defendant Select Portfolio Servicing, Inc. (SPS) filed a response in opposition to the Motion on August 2, 2017. See Defendant Select Portfolio Servicing, Inc.'s Response in Opposition to Plaintiff's Renewed Motion for Leave to Supplement and Amend the Complaint (Doc. 204; Response). With leave of Court, see Order (Doc. 207), Durham Commercial Capital Corp. (Durham) filed a reply in support of its Motion on September 15, 2017. See Plaintiff Durham Commercial Capital Corp.'s Reply in Support of its Renewed Motion for Leave to Supplement and Amend the Complaint [D.E. 194] (Doc. 209; Reply). Despite the tortured history of this case which the Court will discuss below, this matter is ripe for review.[1]

_____

[1] In addition, Durham filed Plaintiff's Request for Judicial Notice (Doc. 206; Request) on August 25, 2017. SPS filed a motion to strike this Request, to which Durham responded. See Defendant Select Portfolio Servicing, Inc.'s Motion to Strike Plaintiff's Request for Judicial Notice (Doc. 208; Motion to Strike), filed September 8, 2017; Plaintiff Durham Commercial Capital Corp.'s Response in Opposition to Defendant Select Portfolio Servicing, Inc.'s Motion to Strike Plaintiff's Request for Judicial Notice [D.E. 208] (Doc. 210), filed September 22, 2017. In its Request, Durham asks this Court to take notice of a recently decided case from the Southern District of Florida in which the court addressed one of the same legal issues raised in this case, namely, whether UCC § 9-406 provides a private cause of action. See Request, Ex. A: Durham

# I. Procedural History[2]

Durham initiated this action on July 25, 2014, by filing a two-count Complaint naming Connolly, Geaney, Ablitt and Willard, P.C. (CGAW) and SPS as Defendants. See Complaint (Doc. 1). In the Complaint, Durham alleges a breach of contract claim against CGAW and a claim for "breach of statutory duty to pay accounts" under § 9-406 of the Uniform Commercial Code (UCC) against SPS. See generally Complaint.[3] Stated succinctly, Durham claims that, as the assignee of CGAW's accounts receivable, it is entitled to recover from SPS, the account debtor, payments SPS made to CGAW on those accounts after SPS received Durham's Notice of Assignment. On October 27, 2014, SPS filed an answer to the Complaint raising numerous affirmative defenses. See Defendant Select Portfolio Servicing, Inc.'s Answer and Affirmative Defenses (Doc. 14; Answer).

_____

Commercial Capital Corp. v. Ocwen Loan Servicing, LLC, No. 9:15-cv-80200-KAM, ECF Doc. 249 (S.D. Fla. entered Aug. 24, 2017) (order denying motions to dismiss). As Durham is merely asking the Court to consider a recently decided case on a legal question at issue here, "the procedural vehicle of a motion [for judicial notice] is unnecessary," the Court "can and [does] take account of all relevant authorities in determining the content of the law." See Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Labor, 812 F.3d 843, 875 n.33 (11th Cir. 2016). Thus, the Court construes the filing as a notice of supplemental authority. Notably, SPS filed its own notice of supplemental authority on October 31, 2017, pointing the Court to another recent opinion on the same issue. See Defendant's Notice of Supplemental Authority (Doc. 211), filed October 31, 2017 (citing ARA, Inc. v. Waste Mgmt. Nat'l Serv., Inc., No. 17-159 (MJD/SER), 2017 WL 4857428 (D. Minn. Oct. 25, 2017)). Given the dearth of any binding legal authority on whether UCC § 9-406 allows a private cause of action, the Court finds it appropriate and helpful to consider case law from other jurisdictions. In light of the foregoing, SPS's Motion to Strike is due to be denied. Indeed, the Court discourages the parties from filing motions to strike whenever counsel and/or a party believes that the other is not complying with this Court's directive. Instead, the parties should focus on the merits of the matters before the Court. Reflexively filing motions to strike simply multiplies the proceedings and delays a resolution of any pending motion and ultimately the case.

[2] In its October 17, 2016 Order on summary judgment, the Court set forth at length the background facts giving rise to Durham's claim against SPS. See Order (Doc. 119) at 2-11. The Court incorporates those facts and defined terms by reference here and will assume that the reader is familiar with those terms and the underlying facts of this case.

[3] At Durham's request, the Court dismissed the claim against CGAW without prejudice on October 27, 2014. See Durham's Notice of Voluntary Dismissal, Without Prejudice, of Defendant, Connolly, Geaney, Ablitt and Willard, P.C. (Doc. 12); Order (Doc. 13).

In accordance with the requirements of Rule 16, Federal Rules of Civil Procedure (Rule(s)), the Court entered a Case Management and Scheduling Order (Doc. 18; CMSO) on December 3, 2014. Significantly, the CMSO set a February 17, 2015 deadline for motions to amend the pleadings. See CMSO at 1. Neither party requested leave to amend before this deadline expired. Indeed, the case generally proceeded in accordance with the CMSO, and following extensive discovery both parties filed motions for summary judgment. See Defendant Select Portfolio Servicing, Inc.'s Motion for Final Summary Judgment (Doc. 58; SPS Summary Judgment Motion), filed October 28, 2015; Plaintiff, Durham Commercial Capital Corp.'s Motion (Renewed) for Final Summary Judgment Against Defendant, Select Portfolio Servicing, Inc. and Incorporated Memorandum of Law (Doc. 64; Durham Summary Judgment Motion), filed November 2, 2015.[4] Over seven months after filing their Summary Judgment Motions, the parties jointly requested leave to file additional briefing regarding choice-of-law issues that they had previously failed to identify. The Court granted this request, and the parties filed their supplemental briefs on July 29, 2016. See Defendant Select Portfolio Servicing, Inc.'s Memorandum on Choice of Law Issues (Doc. 109); Plaintiff Durham Commercial Capital Corp.'s Brief Concerning Choice-of-Law Issues (Doc. 110). One month later, SPS filed a notice of supplemental authority citing a recently-decided case from the Fourth Circuit Court of Appeals: Forest Capital, LLC v. BlackRock, Inc., 658 F. App'x 675 (4th Cir. Aug. 10, 2016). See Defendant's Notice of Supplemental Authority (Doc. 111), filed September 1, 2016. In

---

[4] Durham filed an initial motion for summary judgment on March 23, 2015. See Plaintiff, Durham Commercial Capital Corp.'s Motion for Final Summary Judgment Against Defendant, Select Portfolio Servicing, Inc., and Incorporated Memorandum of Law (Doc. 25; First Durham MSJ). Because SPS had not yet had sufficient time to complete discovery, the Court found that Durham's motion was premature and denied it without prejudice to renewal upon the completion of discovery. See Order (Doc. 48), entered June 12, 2015.

Forest Capital, the Fourth Circuit held that UCC § 9-406, the provision on which Durham bases its claim against SPS, does not provide a private right of action against an account debtor.  See Forest Capital, 658 F. App'x at 676, 680-81.

On October 17, 2016, the Court entered an Order (Doc. 119; Summary Judgment Order) granting, in part, and denying, in part, the Summary Judgment Motions.  Although the Court addressed numerous arguments in resolving the Summary Judgment Motions, for purposes of the instant Motion, two findings in particular are relevant.  In the Summary Judgment Order, the Court struck SPS's Notice of Supplemental Authority because SPS had not argued in its Summary Judgment Motion that UCC § 9-406 did not create a private right of action, and thus, the case was not "supplemental authority" on any argument before the Court at that time.  See Summary Judgment Order at 17 n.8.  In addition, the Court denied Durham's request for summary judgment on its prima facie case, finding that a "genuine dispute exists as to whether Durham factored the accounts for which it now seeks payment."  Id. at 39.  The Court explained that to recover the payments that SPS made to CGAW despite the Notice of Assignment, Durham must prove that those payments were on invoices that had actually been assigned to Durham.  See id. at 38-39.  However, the Court reviewed the record and found that Durham had not "provided any evidence that the amounts SPS paid were actually on accounts purchased by and assigned to Durham."  Id. at 38.  In light of this factual issue, among others, the case could not be resolved on summary judgment and the Court set the matter for a bench trial on the February 2017 Trial Term.  See Order (Doc. 120).

However, trial in February was not to be.  Rather than proceed to trial on the issues remaining in the case, the docket in this action began hemorrhaging new motions from

the parties. On November 23, 2016, Durham moved for permission to file additional briefing to address the Court's finding that Durham must prove which accounts it purchased. <u>See</u> Plaintiff Durham Commercial Capital Corp.'s Motion to Authorize Additional Limited Briefs in Order to Enable the Court to Consider Clarification of the Court's <u>Sua</u> <u>Sponte</u> Ruling in Section C.1 of the Order Granting in Part, and Denying in Part, the Parties' Cross-Motions for Summary Judgment [D.E. 119] ([Doc. 121](); Motion to Clarify). Durham argued that the Court erred in finding that UCC § 9-406 required "proof that Durham purchased particular accounts from CGAW, before it could qualify as an assignment under Section 9-406(a) of the UCC." <u>See</u> Motion to Clarify at 2-3. According to Durham, because the Factoring Agreement granted Durham a security interest in all of CGAW's Purchased and non-purchased accounts, under the UCC, Durham qualified as an "assignee" and had the right to payment on all accounts. <u>Id.</u> at 3. In Durham's view, the Court made a legal error in failing to recognize that Durham's security interest gave rise to a valid assignment of the right to payment under the UCC.

For its part, SPS filed a renewed motion for summary judgment, a motion to amend its answer and affirmative defenses, and a motion for judgment on the pleadings. <u>See</u> Defendant Select Portfolio Servicing, Inc.'s Renewed Motion for Final Summary Judgment ([Doc. 125]()), filed December 29, 2016; Defendant Select Portfolio Servicing, Inc.'s Motion for Judgment on the Pleadings with Incorporated Memorandum of Law ([Doc. 128]()), filed January 3, 2017; Defendant Select Portfolio Servicing, Inc.'s Motion for Leave to Amend Answer and Affirmative Defenses ([Doc. 129]()), filed January 3, 2017. In these motions, SPS attempted to raise two defenses that it had not previously asserted. SPS argued that: (1) based on the <u>Forest Capital</u> decision, Durham's claim fails because UCC

§ 9-406 does not provide a private cause of action, and (2) based on the Summary Judgment Order, Durham cannot recover because it has no evidence of which accounts it purchased. Durham filed a motion to strike SPS's motions on January 10, 2017, arguing inter alia, that they were untimely, which prompted SPS to file a motion to extend the CMSO deadlines nunc pro tunc. See Plaintiff Durham Commercial Capital Corp.'s Motion to Strike Defendant Select Portfolio Servicing, Inc.'s: (1) Renewed Motion for Final Summary Judgment [D.E. 125]; (2) Motion for Leave to Amend Answer and Affirmative Defenses [D.E. 129]; and (3) Motion for Judgment on the Pleadings [D.E. 128] and, Alternatively Conditional Motion for Enlargement of Time to Substantively Respond to Each of Defendant's Untimely Motions (Doc. 135); Defendant Select Portfolio Servicing, Inc.'s Motion for Limited Extension of Deadlines in Scheduling Order Nunc Pro Tunc (Doc. 136), filed January 11, 2017.

On January 30, 2017, the Court entered an Order denying the Motion to Clarify because Durham misapprehended the basis for the Court's ruling. See Order (Doc. 143; Clarification Order). The Court explained that "[w]hether Durham had a right to collect on all accounts receivable—both purchased and non-purchased—based on its security interest in those accounts is irrelevant." Id. at 3. Rather, the Court found it necessary for Durham to "prove it actually purchased accounts receivable to recover payment from SPS because that is the basis of its claim against SPS as pled." See Clarification Order at 3 (emphasis added). In the Complaint, Durham defined the term "Purchased Accounts" to mean "certain of [CGAW's] accounts," which Durham purchased under the Factoring Agreement, and drew a distinction between "Purchased Accounts" and "non-purchased accounts." See Complaint ¶¶ 9-11. Although Durham alleged the existence of a security

interest in both Purchased and non-purchased accounts, it specifically limited its claim against SPS to those payments made on "certain Purchased accounts." See Clarification Order at 4. As such, "Durham's claim as pled is based on CGAW's purported assignment of a right to payment arising from Durham's purchase of accounts, and SPS's alleged wrongful payment on those purchased accounts." Id. at 5. The Court found that "[n]either the Complaint nor Durham's Summary Judgment Motion indicated that Durham sought payment based on a security interest in all accounts receivable." Id. at 4. Thus, the Court would not permit Durham to "change its theory of recovery 'through argument at the summary judgment phase of proceedings.'" Id. at 4 (quoting Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC, 710 F.3d 1221, 1228 (11th Cir. 2013)).

Less than a week after the Court entered the Clarification Order, on February 3, 2017, Durham filed Plaintiff's Motion to Modify the Court's Scheduling Order and For Leave to File an Amendment to the Plaintiff's Complaint (Doc. 145; First Motion to Amend).[5] In the First Motion to Amend, Durham sought leave to amend under Rule 15(a)(2) and 16(b) in order to expand its claim beyond Purchased Accounts and include the non-purchased accounts as well. The Court held a hearing on February 8, 2017, to address the myriad pending motions. See Minute Entry (Doc. 148); see also Transcript of February 8, 2017 Court Proceedings (Doc. 150; February Tr.). At the hearing, in an effort to avoid any further delay of trial, Durham affirmatively withdrew its First Motion to Amend and stated its intention to proceed to trial on the current pleadings. See February

---

[5] At this same time, Durham also amended its initial disclosures and began producing additional discovery to SPS, spawning a motion for sanctions from SPS. See Defendant Select Portfolio Servicing, Inc.'s Rule 37 Motion for Sanctions (Doc. 158), filed March 27, 2017. On April 28, 2017, the Magistrate Judge entered an order denying the request for sanctions which sets forth in detail the discovery dispute between the parties. See Order Denying Defendant's Motion for Sanctions (Doc. 178) at 1-4. As such, the Court will not re-state that portion of the tortured procedural history here.

Tr. at 37-40.  The Court denied SPS's untimely motions and set the case for trial in May 2017.  Id. at 4-7, 34-36, 51-52; see also Minute Entry (Doc. 148).

Once again, trial was not to be.  As the parties began to submit their pre-trial filings, it became evident to the Court that this case was not trial ready.  See Joint Pretrial Statement (Doc. 154; Joint Stipulation), filed March 8, 2017; Defendant Select Portfolio Servicing, Inc.'s Motion in Limine (Doc. 155), filed March 17, 2017; Select Portfolio Servicing, Inc.'s Proposed Findings of Fact and Conclusions of Law (Doc. 174) and Durham Commercial Capital Corp.'s Proposed Findings of Fact and Conclusions of Law (Doc. 175; Durham's Proposed Findings), both filed April 26, 2017.  Specifically, despite Durham's stated decision to withdraw the First Motion to Amend and intention to proceed to trial on the Complaint, the Joint Stipulation and Durham's Proposed Findings revealed that Durham fully intended to reassert its request to amend the Complaint during trial by invoking Rule 15(b).  Thus, rather than streamlining the issues for trial, Durham's decision to withdraw its First Motion to Amend simply delayed resolution of those issues until trial. As such, the Court set this case for a status conference which was held on May 25, 2017, and addressed this problem with Durham.  See Minute Entry (Doc. 186; May Status Conference).[6]

At the May Status Conference, the Court expressed its unwillingness to proceed to trial on a case where "nobody can agree on what the claims are," and where new legal theories would be raised and addressed for the first time in the middle of trial.  See

---

[6] Further complicating the procedural history of this case, during this same time period, SPS requested a stay of the case in light of communications it had received from the Chapter 7 trustee in CGAW's bankruptcy.  See Defendant Select Portfolio Servicing, Inc.'s Renewed Motion to Stay Proceedings and Supporting Memorandum of Law (Doc. 176), filed April 28, 2017.  The Court addressed this request at length during the May Status Conference as well.  The Court will not set out the issues pertaining to the trustee and SPS's request for a stay here because they do not impact the resolution of the instant Motion.

Transcript of May 25, 2017 Status Conference (Doc. 188; May Tr.) at 31-32, 48. In addition, the Court expressed some skepticism regarding Durham's apparent contention that Rule 15(b) would allow a party to forgo seeking leave to amend under Rule 15(a) and instead wait until the middle of trial to seek to amend when the party knew of the need for amendment well in advance of the trial. See id. at 50-51; see also Transcript of June 6, 2017 Telephonic Status Conference (Doc. 195; June Tr.) at 22. The Court discussed potential avenues for moving the case forward, set the matter for a follow-up status conference in two weeks, and stayed the case for thirty days until the question of how to proceed could be resolved. See Order (Doc. 187), entered May 26, 2017. At the June 6, 2017 Status Conference, the Court again clarified Durham's options in terms of how to get this case trial ready. In the Court's view, Durham could either proceed to trial on the current Complaint, in which its claim against SPS is limited to Purchased Accounts, or it could seek leave to amend the Complaint to expand its claim to include both Purchased and non-purchased accounts. See Minute Entry (Doc. 190), entered June 6, 2017; June Tr. at 17, 22. A few days later, Durham indicated that it would be filing a motion to amend its Complaint, and the instant Motion followed on June 22, 2017. See Durham Commercial Capital Corp.'s Notice of Intent to File a Motion for Leave to Amend the Complaint (Doc. 192), filed June 9, 2017.

## II.    Applicable Law

When the Court has established a specific deadline for amendments to pleadings, the movant must first establish good cause for seeking leave to amend after that deadline pursuant to Rule 16(b). See Walters v. Altec Indus., Inc., No. 3:01-CV-371-J-12TEM, 2003 WL 22012046, at *1 (M.D. Fla. Mar. 3, 2003); Perez v. Pavex Corp., No.

801CV0069T27MSS, 2002 WL 31500404, at *1 (M.D. Fla. Oct. 18, 2002). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" See Sosa v. Airprint Systems, Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note).

Once the movant establishes good cause under Rule 16, the Court will consider whether the amendment is proper under Rule 15. See Sosa, 133 F.3d at 1419. Rule 15(a)(1) establishes that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Thereafter, a party may amend its pleadings only upon leave of court or by obtaining written consent of the opposing party. See Rule 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires." Id. As a result, "[t]here must be a substantial reason to deny a motion to amend." Laurie v. Ala. Ct. of Crim. App., 256 F.3d 1266, 1269, 1274 (11th Cir. 2001) (per curiam). Substantial reasons justifying a court's denial of a request for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); see also Maynard v. Bd. of Regents of the Div. of Univers. of the Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003).

## III.     Discussion

In the current Complaint, Durham asserts one claim against SPS, for breach of its statutory duty to pay accounts pursuant to UCC § 9-406.  Durham seeks to recover the allegedly wrongful payments SPS made to CGAW on "certain Purchased Accounts."  <u>See</u> Complaint ¶¶ 26-31.  In the proposed Amended and Supplemental Complaint (<u>Doc. 194-1</u>; Proposed Amended Complaint), Durham adds New York common law, along with the UCC § 9-406, as the legal basis for SPS's purported duty to pay accounts.  <u>See</u> Motion, Ex. A: Proposed Amended Complaint at 7-8.  In addition, Durham reasserts its allegation that the Factoring Agreement gave Durham a security interest in all of CGAW's accounts, whether Purchased or not, <u>id.</u> ¶¶ 13, 14, but now expands its claim to encompass the payments SPS made to CGAW on <u>all</u> accounts, not just the "certain Purchased Accounts."  <u>See</u> Proposed Amended Complaint ¶¶ 32, 34, 36-38.  Durham also adds five additional claims to the Proposed Amended Complaint raising several new causes of action: (1) an action to collect wrongfully paid accounts pursuant to § 9-607, (2) an action to collect wrongfully paid accounts pursuant to § 9-607 based on CGAW's default under the Factoring Agreement, (3) a claim for breach of contract premised on the Notice of Assignment, (4) a claim alleging promissory estoppel, and (5) a claim for breach of contract premised on the Attorney Agreement between SPS and CGAW.  <u>See</u> <u>generally</u> Proposed Amended Complaint.

Durham argues that leave to amend the Complaint to expand its claim is warranted at this late stage in the proceedings because it was unaware that the allegations in the Complaint limited its claim to "Purchased Accounts" until after the Court ruled on summary judgment and entered the Clarification Order.  <u>See</u> Motion at 1-2.

According to Durham it was "surprised" to learn that the allegations of wrongful payment in its Complaint were limited to "Purchased Accounts" because SPS had not raised the issue and Durham had consistently asserted its right to payment on all accounts. See id. at 2. Because Durham filed the First Motion to Amend promptly after the Court entered the Clarification Order, Durham maintains that it has acted with diligence in seeking amendment. Id. at 9, 15. Moreover, according to Durham, the record in this case shows that "SPS was fully aware that Durham's claim[ ] was based upon the theory that CGAW assigned all accounts to Durham, and Durham is entitled to recover all payments SPS wrongfully paid to CGAW after receiving Durham's Notice of Assignment agreement." See id. at 14. As such, Durham insists that it has not acted in bad faith and SPS would not suffer any prejudice if the Court were to grant the instant Motion to expand Durham's claim from Purchased Accounts to all accounts. Id. at 9. Notably, in its Motion to Amend, Durham does not address why the Court should permit it to expand its causes of action from one count under UCC § 9-406, to the myriad additional counts included in the Proposed Amended Complaint.

Upon review of the Motion to Amend, the record in this case, and the applicable authority, the Court finds that Durham fails to establish good cause to extend the CMSO deadline. As stated above, to establish good cause to modify the scheduling order, Durham must demonstrate that the deadline could not be met despite its diligence. See Sosa, 133 F.3d at 1418. Indeed, "'[i]f [a] party was not diligent, the [good cause] inquiry should end.'" Id. (second and third alteration in original) (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)). A plaintiff lacks diligence not only when it "has full knowledge of the information with which it seeks to amend its complaint

before the deadline passes," but also when a plaintiff fails to "seek the information it needs to determine whether an amendment is in order."  See S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 n.3 (11th Cir. 2009).

First, with respect to Durham's request to add several entirely new causes of action, Durham completely fails to address this aspect of its proposed amendment in the Motion.  Durham offers no reason why, in the exercise of diligence, it could not have identified these additional causes of action prior to the deadline for amending the pleadings.  Accordingly, the Court will deny the Motion to the extent Durham seeks to add the five additional claims set forth in Counts II – VI of the Proposed Amended Complaint.

Next, Durham seeks to amend the allegations of the Complaint to remove the language which limits its claim to "Purchased Accounts," so that it can pursue recovery on all CGAW accounts.  Compare Complaint ¶ 26 with Proposed Amended Complaint ¶ 34.  Durham maintains that it acted diligently in seeking this amendment because it could not have known that the Court would "consider" its claim limited to Purchased Accounts until after the Court issued its ruling.  See Motion at 2.  Durham characterizes the Court's reliance on the "Purchased Accounts" allegations in the Complaint as the Court's "restrictive construction" of the Complaint, a "pleading restriction," or how "the Court viewed" Durham's pleadings.  See Motion at 2, 15.  The Court firmly rejects these characterizations.  The Complaint, as pled by Durham, is not ambiguous.  To understand the parameters of Durham's claim, the Court did not engage in any complicated interpretation or construction of the allegations, the Court merely read the plain language of Durham's allegations.  Durham claimed a right to payment on the "Wrongfully Paid Accounts," which it specifically defined in the Complaint as the monies SPS paid to CGAW

"to satisfy certain Purchased Accounts totaling $1,104,086.23."  See Complaint ¶¶ 26, 30-31 (emphasis added).  Durham defined the term "Purchased Accounts" as "certain of [CGAW's] accounts" that Durham purchased pursuant to the Factoring Agreement, id. ¶ 9, and specifically distinguished "Purchased Accounts" from "non-purchased accounts" in the Complaint, id. ¶ 10.  Moreover, as discussed in the Summary Judgment Order, the Factoring Agreement plainly contemplates that Durham would purchase some, but not necessarily all, of CGAW's accounts.  See Summary Judgment Order at 38-39.  Based on Durham's unambiguous allegations, it is unclear what other interpretation would be possible.  Thus, in ruling on summary judgment, the Court looked for evidence identifying the "Purchased Accounts" on which Durham sought payment and, finding none, denied summary judgment on that basis.  See Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) ("'[A] district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.'" (quoting United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004))).

While the Court accepts that Durham genuinely may have been surprised when the Court pointed out the allegations in the Complaint, any such surprise was due to Durham's own lack of diligence in failing to carefully review its own Complaint.  See Castillo v. Lara's Trucking, Inc., No. 16-20280-CIV-TORRES, 2017 WL 1287492, at *2 (S.D. Fla. Jan. 12, 2017) (finding no diligence where a cursory examination of the amended complaint prior to the deadline would have revealed that plaintiffs had omitted one of their causes of action); see also Hammock v. Wal-Mart Stores, Inc., No. 1:10-cv-04119-SCJ, 2013 WL 11897800, at *4 (N.D. Ga. Feb. 1, 2013).  Indeed, the Court

observes that in Durham's first motion for summary judgment, Durham's recitation of the undisputed facts closely tracked the allegations of the Complaint but without the language limiting Durham's claim to Purchased Accounts alone.  Compare Complaint ¶ 26 with First Durham MSJ ¶ 18; compare Complaint ¶ 10 with First Durham MSJ ¶ 5; compare Complaint ¶ 24 with First Durham MSJ ¶ 9.  Thus, at the very least, in preparing its First Motion for Summary Judgment, Durham could and should have identified its pleading error and moved for leave to amend at that time.[7]

Significantly, Durham fails to identify any case in which an adverse ruling from the Court on summary judgment has been found to constitute the type of "new information" which warrants a finding of good cause for amending a scheduling order.  Cf. Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1232 (11th Cir. 2008) ("[T]he fact that [plaintiff] or his counsel misunderstood the [law pertaining to their claim] does not

---

[7] The Court has no information explaining why Durham initially drafted the Complaint in a way that so specifically limited its claim to Purchased Accounts.  Perhaps Durham believed that it had purchased all of the law firm's accounts and was not focused on the distinction between Purchased and non-purchased accounts at that time.  Notably, at an April 17, 2017 hearing before the Magistrate Judge on SPS's Motion for Sanctions, Durham's counsel stated:

> I believe what happened is before the lawsuit was filed and when it was filed, we were not aware that SPS entered into a secret agreement with the law firm to conceal from Durham that almost three-quarters of a million dollars in accounts were paid to the law firm without Durham's knowledge.  We were operating under the assumption that, in the usual course of business, the law firm sold all of its accounts to Durham, Durham purchased the accounts, and every account that was due and owing from SPS was payable to Durham.

See Transcript of April 17, 2017 Motion Hearing (Doc. 180) at 40 (emphasis added).  Thus, when Durham discovered that its assumption was wrong, in the exercise of diligence, it should have re-examined its Complaint and sought leave to amend at that time.  The fact that Durham did not realize the restrictive manner in which it affirmatively pled its claim cannot support a finding of diligence.  Moreover, while Durham emphasizes that SPS did not raise the issue, this does not allow the Court to disregard Durham's pleadings at summary judgment.  See Flintlock Constr. Servs., LLC, 710 F.3d at 1227-28.  Indeed, Durham's Complaint specifically distinguishes "Purchased Accounts" from non-purchased accounts.  See Complaint ¶ 10 ("In addition to the sale of accounts, [CGAW] also granted to Durham . . . a continuing security interest in the Purchased Accounts and a security interest in certain specified collateral which included non-purchased accounts and all proceeds of those accounts . . . ." (emphasis added); id. ¶ 26 ("[SPS] wrongfully paid to [CGAW], rather than paying Durham, monies to satisfy certain Purchased Accounts . . . ." (emphasis added)).  In ruling on summary judgment, the Court is obligated to address the merits of the claims as pled.  See Reese, 527 F.3d at 1269.

constitute good cause."); see also Hammock, 2013 WL 11897800, at *4. Notably, in Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307 (11th Cir. 2002), the Eleventh Circuit found no abuse of discretion where a district court denied a motion for leave to amend the complaint when the motion was "designed to avoid an impending adverse summary judgment." See Lowe's Home Centers, Inc., 313 F.3d at 1315. The Lowe's Home Centers Court went on to state that "[i]t is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions." Id. at 1315; see also S. Grouts & Mortar,Inc, 575 F.3d at 1242. The instant Motion comes even later in the proceedings than the untimely motion in Lowe's Home Centers. Here, Durham seeks to change course not while summary judgment is pending, but after the Court has ruled against Durham and seeks to undo that ruling. These circumstances are not compatible with a finding of diligence. As such, granting Durham's request to expand its claim to all accounts at this point in the proceedings would be entirely inconsistent with this Court's responsibility to "ensure the orderly administration of justice." See Lowe's Home Centers, Inc., 313 F.3d at 1315.

In the Motion, Durham focuses on its contention that leave to amend is warranted because it has not acted in bad faith and SPS will not suffer prejudice. However, the absence of bad faith and a lack of prejudice do not address the requirement of diligence, and thus do not establish good cause to allow amendment of the Complaint over two years after the deadline, and after an adverse ruling on the parties' Summary Judgment Motions. Donley v. City of Morrow, Ga., 601 F. App'x 805, 811-12 (11th Cir. 2015) ("[Plaintiff's] arguments—that he did not act in bad faith and that the Defendants would

not have been prejudiced—ignore Rule 16(b) and do not show diligence or good cause for granting leave to amend many months after the deadline.").  Moreover, the Court disagrees with Durham's assessment that SPS will not suffer any prejudice if Durham is allowed to amend its theory of recovery at this stage in the proceedings.  As discussed at the Hearings, if the Court were to allow Durham to broaden its claim, then SPS would need the opportunity to test those claims before trial, resulting in another round of dispositive motions, further expense and delay.  <u>See</u> May Tr. at 31-32, 36, 42, 48.  Thus, allowing Durham to amend its Complaint to expand the scope of its claim beyond what it unequivocally alleged, and include all accounts, more than two years after the deadline for doing so, after the close of discovery, after the Court has ruled on summary judgment, and on the eve of trial would cause substantial prejudice to SPS.  <u>See</u> <u>Diaz v. Burchette,</u> <u>585 F. App'x 968, 969-70 (11th Cir. 2014)</u> ("Nor did the district court abuse its discretion in determining that amending the complaint after the close of discovery and after [defendant] had filed its motion for summary judgment would have resulted in considerable prejudice to [defendant] and unduly delayed the proceedings.").  Indeed, "[p]rejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."  <u>See</u> <u>Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999)</u>.  Accordingly, to the extent Durham seeks leave to amend its claim to encompass non-purchased accounts, this request is due to be denied.

Finally, the Court considers Durham's request to amend its breach of duty to pay accounts claim against SPS to invoke not only a purported statutory duty under UCC § 9-406, but also an alleged New York common law duty.  <u>Compare</u> Proposed Amended

Complaint at 7-9; with Complaint at 6-8. Durham seeks to invoke New York common law as an alternative legal basis for this claim in light of SPS's recent assertion, based on the Forest Capital decision, that UCC § 9-406 does not authorize a private cause of action. The Court is unaware of any appellate court decision prior to Forest Capital which found that UCC § 9-406 did not give rise to a cause of action. Significantly, SPS did not challenge Durham's reliance on UCC § 9-406 until it filed its notice of supplemental authority on September 1, 2016, many months after the summary judgment motions had been filed. See Summary Judgment Order at 17 n.8. Since that time, SPS has expressed its intention to argue that Durham's claim should be dismissed for failure to state a claim based on the reasoning set forth in Forest Capital.

For the reasons discussed at the February Hearing, the Court finds that granting Durham leave to make this limited amendment is warranted. See Feb. Hr. at 5-6, 28-29. Given the state of the law at the time Durham drafted its Complaint, Durham reasonably believed that its reliance on UCC § 9-406 was sufficient, and SPS did not challenge that reliance in any way. As such, the Court finds no lack of diligence or undue delay in Durham's failure previously to invoke New York common law. Moreover, allowing this limited amendment does not expand Durham's theory of relief against SPS, nor does it change the underlying facts or broaden the scope of Durham's claim. Accordingly, SPS will not suffer any undue prejudice as a result of this amendment.[8] Indeed, in considering

---

[8] Notably, although SPS argued in its Response that the UCC § 9-406 claim is futile because there is no such cause of action, it did not address Durham's citation to New York common law as an alternative legal basis for this claim. As neither party has briefed the validity of Durham's interpretation of New York common law, the Court expresses no opinion at this time as to whether Durham's position will ultimately be availing. For purposes of the instant Motion, the Court is satisfied that such a claim is not futile. See Continental Purchasing Co. v. Van Raalte Co., 295 N.Y.S. 867, 870 (N.Y. App. Div. 1937) ("After notice of the transfer, . . . the debtor is put on his guard, and if he pays the assignor any money which, under the assignment,

whether to allow Durham to amend its Complaint, the Court observes the well-established principle that the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346 (2014); see also Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925 (11th Cir. 2016). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." See Sams v. United Food & Comm. Workers Int'l Union, AFL-CIO, CLC, 866 F.2d 1380, 1384 (11th Cir. 1989); see also Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. 1981) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."). In light of these principles, if the duty to pay accounts does exist under New York common law, and Durham's factual allegations show that SPS breached this duty, dismissal would not be appropriate merely because Durham incorrectly invoked UCC § 9-406. Thus, to avoid confusion and clarify the pleadings, the Court will direct Durham to amend the Complaint only insofar as it may incorporate New York common law into its duty to pay accounts claim against SPS.[9] In an effort to avoid any further delay, the Court will set this matter for a status conference to address how this case should proceed in light of the Court's ruling. As such, the Court will deny Durham's recently-filed motion for a status conference as moot. See Plaintiff Durham Commercial Capital Corp.'s Motion

---

belongs to the assignee, or if he does anything prejudicial to the rights of the latter, he is liable for the resulting damage.").

[9] In recognition of the claims which have already been dismissed from this case, Durham should also remove Count I of the Complaint, as well as paragraph 27 and any references to the "Outstanding and Unpaid Accounts," from the amended complaint.

for Status Conference (Doc. 212), filed December 8, 2017. In accordance with the foregoing, it is

**ORDERED:**

1. Defendant Select Portfolio Servicing, Inc.'s Motion to Strike Plaintiff's Request for Judicial Notice (Doc. 208) is **DENIED**.

2. Plaintiff Durham Commercial Capital Corp.'s Renewed Motion for Leave to Supplement and Amend the Complaint (Doc. 194) is **GRANTED, in part, and DENIED, in part**.

   A. The Motion is **GRANTED** to the extent Durham may amend the Complaint to include a reference to New York common law as an additional basis for its breach of duty to pay accounts claim against SPS, and remove those claims which were previously dropped or dismissed. **The Court specifically cautions Durham not to make any changes other than those permitted in this Order in the amended complaint.**

   B. Otherwise, the Motion is **DENIED**.

3. Durham shall have up to and including **December 27, 2017**, to file the amended complaint authorized by this Order. No further amendment of the Complaint will be permitted.

4. This case is set for a Status Conference to address how to proceed in light of the Court's ruling. The Status Conference will take place on **Wednesday, January 17, 2018, at 2:00 p.m.**, before the undersigned at the Bryan Simpson

United States Courthouse, 300 North Hogan Street, Jacksonville, Florida, 32202, in Courtroom 10B.[10]

5.  SPS shall respond to the amended complaint on or before **January 12, 2018**.

6.  Plaintiff Durham Commercial Capital Corp.'s Motion for Status Conference (Doc. 212) is **DENIED as moot.**

**DONE AND ORDERED** in Jacksonville, Florida, this 15th day of December, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to counsel of record

---

[10] All persons entering the Courthouse must present photo identification to Court Security Officers. Although cell phones, laptop computers, and similar electronic devices generally are not permitted in the building, attorneys may bring those items with them upon presentation to Court Security Officers of a Florida Bar card (presentation of the Duval County Courthouse lawyer identification card will suffice) or Order of special admission pro hac vice. However, all cell phones must be turned off while in the courtroom.