UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DURHAM COMMERCIAL CAPITAL CORP.,

    Plaintiff,

v.                                       Case No. 3:14-cv-877-J-34PDB

SELECT PORTFOLIO SERVICING, INC.,

    Defendant.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant Select Portfolio Servicing, Inc.'s Motion to Dismiss and/or Strike Plaintiff's First Amended Complaint (Doc. 217; Motion), filed on January 12, 2018. In the Motion, Defendant Select Portfolio Servicing, Inc. (SPS) raises seven arguments in support of dismissal. See Motion at 2. On January 17, 2018, the Court held a Status Conference with the parties to discuss the procedural posture of the case, the record of which is incorporated herein by reference. See Minute Entry (Doc. 218; Status Conference); see also Transcript of January 17, 2018 Status Conference (Doc. 219; Tr.), filed January 26, 2018. For the reasons discussed at the Status Conference, the Court relieved Plaintiff Durham Commercial Capital Corp. (Durham) of its obligation to respond to SPS's first argument for dismissal, and directed Durham to respond to the remaining arguments no later than February 2, 2018. See Minute Entry (Doc. 218); see also Tr. at 22-23. In accordance with the Court's instructions, Durham filed a response in opposition to the Motion on February 2, 2018. See Plaintiff Durham Commercial Capital Corp.'s Response in Opposition to Defendant Select Portfolio

-1-

Servicing, Inc.'s Motion to Dismiss and/or Strike Plaintiff's First Amended Complaint [D.E. 217] (Doc. 221; Response). In addition, on March 13, 2018, SPS filed a notice of supplemental authority. See Defendant's Notice of Additional Authority (Doc. 228). Accordingly, this matter is ripe for review.

## I.     Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that

"conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II. Procedural History[1]

Durham initiated this action on July 25, 2014, by filing a two-count Complaint naming Connolly, Geaney, Ablitt and Willard, P.C. (CGAW) and SPS as Defendants. See Complaint (Doc. 1; Initial Complaint). In the Initial Complaint, Durham alleged a breach of contract claim against CGAW and a claim for "breach of statutory duty to pay accounts" under § 9-406 of the Uniform Commercial Code (UCC) against SPS. See generally Complaint.[2] Stated succinctly, Durham claimed that, as the assignee of CGAW's accounts receivable, it is entitled to recover from SPS, the account debtor, payments SPS made to CGAW on those accounts after SPS received Durham's Notice of Assignment.

---

[1] In its October 17, 2016 Order on summary judgment, the Court set forth at length the background facts giving rise to Durham's claim against SPS. See Order (Doc. 119) at 2-11. The Court incorporates those facts and defined terms by reference here and will assume that the reader is familiar with those terms and the underlying facts of this case. In addition, the Court set forth at length the tortured procedural history of this case in the December 15, 2017 Order (Doc. 213) on Durham's Renewed Motion to Amend (Doc. 194). As such, in this Order, the Court recounts only the motions and rulings which provide important context to the arguments raised in the instant Motion.

[2] At Durham's request, the Court dismissed the claim against CGAW without prejudice on October 27, 2014. See Durham's Notice of Voluntary Dismissal, Without Prejudice, of Defendant, Connolly, Geaney, Ablitt and Willard, P.C. (Doc. 12); Order (Doc. 13).

On October 27, 2014, SPS filed an answer to the Complaint raising numerous affirmative defenses. See Defendant Select Portfolio Servicing, Inc.'s Answer and Affirmative Defenses (Doc. 14; Answer). Following extensive discovery both parties filed motions for summary judgment. See Defendant Select Portfolio Servicing, Inc.'s Motion for Final Summary Judgment (Doc. 58; SPS Summary Judgment Motion), filed October 28, 2015; Plaintiff, Durham Commercial Capital Corp.'s Motion (Renewed) for Final Summary Judgment Against Defendant, Select Portfolio Servicing, Inc. and Incorporated Memorandum of Law (Doc. 64; Durham Summary Judgment Motion), filed November 2, 2015.[3] Over seven months after filing their Summary Judgment Motions, the parties jointly requested leave to file additional briefing regarding choice-of-law issues that they had previously failed to identify. The Court granted this request, and the parties filed their supplemental briefs on July 29, 2016. See Defendant Select Portfolio Servicing, Inc.'s Memorandum on Choice of Law Issues (Doc. 109); Plaintiff Durham Commercial Capital Corp.'s Brief Concerning Choice-of-Law Issues (Doc. 110). One month later, SPS filed a notice of supplemental authority citing a recently-decided case from the Fourth Circuit Court of Appeals: Forest Capital, LLC v. BlackRock, Inc., 658 F. App'x 675 (4th Cir. Aug. 10, 2016). See Defendant's Notice of Supplemental Authority (Doc. 111), filed September 1, 2016. In Forest Capital, the Fourth Circuit held that UCC § 9-406, the provision on which Durham based its claim against SPS, does not provide a private right of action against an account debtor. See Forest Capital, 658 F. App'x at 676, 680-81.

---

[3] Durham filed an initial motion for summary judgment on March 23, 2015. See Plaintiff, Durham Commercial Capital Corp.'s Motion for Final Summary Judgment Against Defendant, Select Portfolio Servicing, Inc., and Incorporated Memorandum of Law (Doc. 25; First Durham MSJ). Because SPS had not yet had sufficient time to complete discovery, the Court found that Durham's motion was premature and denied it without prejudice to renewal upon the completion of discovery. See Order (Doc. 48), entered June 12, 2015.

On October 17, 2016, the Court entered an Order (Doc. 119; Summary Judgment Order) granting, in part, and denying, in part, the Summary Judgment Motions. Although the Court addressed numerous arguments in resolving the Summary Judgment Motions, for purposes of the instant Motion, two findings in particular are relevant. In the Summary Judgment Order, the Court struck SPS's Notice of Supplemental Authority because SPS had not argued in its Summary Judgment Motion that § 9-406 did not create a private right of action, and thus, the case was not "supplemental authority" on any argument before the Court at that time. See Summary Judgment Order at 17 n.8.

In addition, the Court denied Durham's request for summary judgment on its prima facie case, finding that a "genuine dispute exists as to whether Durham factored the accounts for which it now seeks payment." Id. at 39. Specifically, the Court found that:

> To establish its prima facie case, Durham must show that SPS paid CGAW on invoices that had been assigned to Durham. It is not enough to show simply that SPS had general notice of an assignment of accounts and that SPS thereafter paid CGAW instead of Durham. If Durham did not purchase a particular account, it would not be entitled to payment from SPS notwithstanding SPS's receipt of the Notice of Assignment. In other words, although the Notice of Assignment states that 'the accounts receivable of [CGAW] have been assigned to Durham, see Notice of Assignment, that notice is effective against SPS only to the extent that CGAW actually did assign particular accounts to Durham. Cf. N.Y.U.C.C. § 9-406, Official Cmt. 4.

See Summary Judgment Order at 38. At that time, it was unclear to the Court whether Durham viewed proof of a valid assignment as a necessary element of its claim.[4] Thus, to the extent Durham sought recovery premised on the Notice of Assignment alone, the Court rejected this contention and held that "[t]he effectiveness of a general notice of assignment simply cannot exist independent of an actual assignment of a particular

---

[4] Based on the arguments raised in Durham's subsequent Motion to Clarify (Doc. 121), Durham has since conceded that proof of a valid assignment is necessary. See Clarification Order (Doc. 143) at 3.

account." See id. at 32. As such, absent any evidence in the record before the Court at that time demonstrating that "the amounts SPS paid were actually on accounts purchased by and assigned to Durham," the Court denied Durham's request for summary judgment on its prima facie case. Id. at 38.[5] In light of this factual issue, among others, the case could not be resolved on summary judgment and the Court set the matter for a bench trial on the February 2017 Trial Term. See Order (Doc. 120).

Following the Court's Summary Judgment Order, Durham filed the Motion to Clarify (Doc. 121) in which it argued that it had established its right to collect the accounts at issue by virtue of its security interest in all of CGAW's accounts. See Motion to Clarify (Doc. 121). The Court rejected this theory of recovery, however, because it was inconsistent with the claim Durham actually pled in the Initial Complaint. See Clarification Order (Doc. 143) at 3-4. The Court explained that, in the Initial Complaint, "Durham contended SPS was liable because (1) Durham purchased some of CGAW's accounts receivable, resulting in assignment of those accounts to it; (2) SPS received notice of that assignment; and (3) SPS wrongfully paid CGAW instead of Durham on some of those purchased accounts." See id. at 4. As neither the Initial Complaint, nor Durham's Summary Judgment Motion "indicated that Durham sought payment based on a security interest in all accounts receivable," the Court rejected Durham's attempt to change its theory of recovery and reiterated that to prevail, Durham must establish that it actually purchased the accounts receivable on which it seeks to recover. Id. at 4-5.

At this point, rather than proceed to trial, both parties attempted to rewind the case. Durham, unwilling to accept the limitations in its own pleadings, sought to expand its claim

---

[5] Notably, SPS had not moved for summary judgment in its favor on this basis.

to cover non-purchased accounts. SPS, newly inspired by the <u>Forest Capital</u> decision and the Court's summary judgment findings, sought another round of dispositive motion practice in which to argue that Durham has no valid claim for relief under § 9-406, and alternatively, that SPS is entitled to judgment because Durham had not presented any evidence identifying the accounts which it had purchased. Notably, up to that point, SPS had never questioned the validity of Durham's cause of action and, until the Court identified the deficiency, had never challenged Durham's failure to identify the accounts it claimed to have purchased.[6] After much procedural jockeying and three status conferences before the undersigned, Durham eventually sought leave to amend the Initial Complaint. <u>See</u> Plaintiff Durham Commercial Capital Corp.'s Renewed Motion for Leave to Supplement and Amend the Complaint (Doc. 194; Renewed Motion to Amend) on June 22, 2017. On December 15, 2017, the Court entered an Order (Doc. 213) granting, in part, and denying, in part, Durham's Renewed Motion to Amend. Specifically, to the extent Durham sought leave to amend its claim to encompass non-purchased accounts, the Court denied this request. <u>See</u> Order (Doc. 213) at 17. However, the Court granted Durham leave to amend to add New York common law as an additional legal basis for its claim given that until the Fourth Circuit's decision in <u>Forest Capital</u>, Durham reasonably believed its reliance on UCC § 9-406, which SPS had never challenged, was sufficient. <u>See</u> <u>id.</u> at 18-19.

---

[6] Notably, during discovery, "SPS served interrogatories and requests for production seeking a list of accounts Durham had purchased from CGAW, evidence relating to accounts CGAW had repurchased from Durham and evidence supporting Durham's damages calculation." <u>See</u> Order (Doc. 178) at 2. Durham responded that such evidence was irrelevant to its claim, and SPS never filed a motion to compel the production of this evidence. <u>Id.</u> at 2-3.

Accordingly, on December 27, 2017, Durham filed the First Amended Complaint (Doc. 214) in which it asserts a claim against SPS for "breach of statutory duty to pay accounts and/or [SPS's] duty under New York common law." See First Amended Complaint (Doc. 214; Amended Complaint) at 6. In the instant Motion, SPS moves to dismiss the Amended Complaint and argues that "[i]t fails to state a cause of action under New York common law," and "[t]here is no private right of action under UCC §9-406." See Motion at 2, 7-8, 9-11.[7] Durham responds that the Amended Complaint includes sufficient allegations to plausibly state a claim for relief under New York statutory and common law. See Response at 5-16.

---

[7] SPS also asserts several other arguments in support of its request for dismissal. See Motion at 2. Specifically, SPS argues that the Amended Complaint improperly "cites to Florida statutes notwithstanding the fact that this Court has ruled that Durham's claims are governed by New York law," "still seeks to enforce a security interest in non-purchased accounts in violation of the Court's Order," "seeks and demands attorney's fees against SPS, which Durham is not entitled to," and alleges damages which "are unsupported by its own President's testimony and also in violation of the Court's Order." See Motion at 2. However, in its Response, Durham explains that its reference to Florida law and request for attorney's fees are drafting errors in that the language was inadvertently carried-over from the Initial Complaint. See Response at 4-5. Thus, the Court will disregard Durham's reference to Florida law, and to the extent the Amended Complaint asserts a claim for attorney's fees, the Court will consider this claim to be withdrawn. As to SPS's argument that the Amended Complaint includes a claim for the non-purchased accounts, the Court does not agree. Indeed, in the Amended Complaint, in pertinent part, Durham uses substantially similar language to that of the Initial Complaint which the Court specifically interpreted as limiting Durham's claim to Purchased Accounts. Compare Complaint ¶¶ 24-26, 31 with Amended Complaint ¶¶ 22-23, 25, 30; see Order (Doc. 143) at 3-4, entered January 30, 2017. Notably, in the Response, Durham affirms that its claim in the Amended Complaint is limited to the Purchased Accounts. See Response at 17-18. Accordingly, SPS's suggestion that the Amended Complaint could be interpreted otherwise is unpersuasive and not a basis for dismissal. Last, SPS argues that the Amended Complaint is due to be dismissed because Durham demands $2,743,971 in damages which is unsupported by the record and beyond the scope of the Court's Order granting leave to amend. However, as discussed at the Status Conference, to the extent SPS contends that Durham's damages claim is without evidentiary support, such an argument is more appropriate at the summary judgment stage of the proceedings. To the extent SPS contends that Durham's reference to over $2 million in damages violates the Court's Order, the Court has reviewed this allegation in context and finds that Durham's reference to $2,743,971 in damages is not a demand for damages from SPS, but rather an allegation as to the amount of its losses from CGAW's breach of the Factoring Agreement. Indeed, Durham included this allegation in the Initial Complaint as part of its claim for breach of the Factoring Agreement against CGAW. See Complaint ¶ 19. Durham's Response confirms that this allegation is not intended as a demand for $2 million in damages from SPS. See Response at 17. Accordingly, the Court does not find the inclusion of this allegation in the Amended Complaint to be a violation of the Court's Order and SPS's request for dismissal on this basis, or for the allegation to be stricken, is without merit.

-8-

## III. Discussion

The Court begins its analysis of the Motion to Dismiss where it ended its analysis of the Motion to Amend, that is, with the well-established principle that the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346 (2014); see also Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925 (11th Cir. 2016). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." See Sams v. United Food & Comm. Workers Int'l Union, AFL-CIO, CLC, 866 F.2d 1380, 1384 (11th Cir. 1989); see also Twombly, 550 U.S. at 555 ("[Rule] 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" (citation omitted)). Indeed, "[t]he form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." See Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. Nov. 5, 1981);[8] see also Keene v. Prine, 477 F. App'x 575, 583 (11th Cir. 2012) ("[W]e have recognized that the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."); So. Pan Servs. Co. v. S.B. Ballard Constr. Co., No. 3:07-cv-592-J-33TEM, 2008 WL 3200236, at *3 (M.D. Fla. Aug. 6, 2008). Thus, in resolving the instant Motion, the Court

---

[8] Although decided after September 30, 1981, the Court notes that in Bank v. Pitt, the Eleventh Circuit treated the Dussouy decision as binding precedent. See Bank v. Pitt, 928 F.2d 1108, 1112 n.4 (11th Cir. 1991) overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002).

focuses not on the title that Durham gave its claim, but rather on the question of whether the underlying factual allegations support a viable claim for relief. If Durham's sole error is mischaracterizing a viable theory of liability, then dismissal is not warranted. See Eiber Radiology, Inc., 673 F. App'x at 928; So. Pan Servs. Co., 2008 WL 3200236, at *3 (rejecting an argument for dismissal aimed not "at any asserted deficiency in the complaint's factual allegations, but rather at an asserted deficiency in its categorization of the legal theory giving rise to the claim").

Durham alleges that it entered into the Factoring Agreement with CGAW "pursuant to which, Durham purchased certain of CGAW's accounts ('Purchased Accounts')." See Amended Complaint ¶ 8. Specifically, in the Amended Complaint Durham states that "[p]ursuant to the Factoring Agreement, CGAW offered and Durham agreed to purchase certain accounts arising from the provision of professional services by CGAW to its clients, one of which was [SPS]." Id. ¶ 11. As such, Durham asserts that it is the "assignee of CGAW's right to receive payment for amounts due in connection with professional legal services CGAW performed or provided to [SPS]." See id. ¶ 20. According to Durham, on December 21, 2012, it "transmitted a letter to [SPS] advising it that the Purchased Accounts had been assigned to Durham and that [SPS] should pay all existing and future invoices only to Durham (the 'Notice of Assignment')." Id. ¶ 22, Ex. 2. Durham maintains that the Notice of Assignment informed SPS "of the assignment of the invoices by CGAW to Durham and to whom payment was to be made (i.e., Durham)." Id. ¶ 23.

Despite this notice, Durham alleges that SPS "wrongfully paid to CGAW, rather than paying Durham, monies to satisfy Purchased Accounts (the 'Wrongfully Paid

Accounts')." Id. ¶ 25. Durham maintains that, having received the Notice of Assignment, SPS "was obligated to pay Durham for each of the Wrongfully Paid Accounts on the date of maturity of each account," id. ¶ 28, and "was not legally permitted to satisfy its obligations to pay the Wrongfully Paid Accounts by paying any party other than Durham . . . ," id. ¶ 29. Durham continues that, "to date, Durham has not received any payment towards the Wrongfully Paid Accounts." Id. ¶ 29. As such, Durham maintains that SPS "owes Durham and Durham has suffered compensatory damages in connection with the Wrongfully Paid Accounts, excluding prejudgment interest." Id. ¶ 30. In support of this claim for relief, Durham invokes the common law of New York, as well as section 9-406 of the Uniform Commercial Code (UCC). See Amended Complaint ¶¶ 20-21, 26-27; see also N.Y. Uniform Commercial Code Law § 9-406 (McKinney).

These allegations are sufficient to state a viable theory of recovery, well-recognized not only in New York, but across the country.[9] Indeed, myriad cases applying

---

[9] See, e.g., Summit Fin. Res., L.P. v. Kathy's General Store, Inc., 527 F. App'x 724 (10th Cir. 2013); Warrington v. Dawson, 798 F.2d 1533 (5th Cir. 1986) (applying Mississippi law); Haas' Estate v. Metro-Goldwyn-Mayer, Inc., 617 F.2d 1136, 1139 (5th Cir. 1980) (applying California law) ("[I]f an account debtor fails to follow the dictates of a valid assignment and improperly pays the assignor, the account debtor must answer to the assignee with a 'double payment' in the amount of the improper payment."); Bay Area Factors v. Target Stores, Inc., 987 F. Supp. 734, 735-36 (D. Minn. 1997); Tempay, Inc. v. Tanintco, Inc., No. 05-15-00130-CV, 2016 WL 192596, at *3-4 (Tex. App. Jan. 15, 2016) (discussing UCC § 9-406 in the context of a claim for "wrongful payment"); Reading Co-Op. Bank v. Suffolk Constr. Co., Inc., 984 N.E. 2d 776, 549 (Mass. 2013) ("[U]pon receipt of notification of assignment, the account debtor becomes statutorily obligated to pay the assignee in order to discharge its contractual obligation to the assignor." (emphases added)); Bldg. Materials Corp. of Am. v. Presidential Fin. Corp., 972 So. 2d 1090, 1092 (Fla. 2d Dist. Ct. App. 2008) ("It is well established under Florida law that a debtor who receives actual notice of the assignment of an account receivable or an obligation to pay may be held liable to the assignee if the debtor later pays the assigned debt to the assignor rather than the assignee."); Fulton Cnty. v. Am. Factors of Nashville, Inc., 551 S.E. 2d 781, 785 (Ct. App. Ga. 2001) ("A debtor of the assignor, who has notice of the assignment, pays the debt to the assignor at his own peril. It is the established rule in the United States that an assignment for a valuable consideration, with notice to the debtor, imposes on him an equitable and moral obligation to pay the assignee.'" (quotation omitted)); First Nat'l Bank of East St. Louis v. Bd. of Educ., Sch. Dist. No. 189, 385 N.E. 2d 811, 813 (Ill. App. Ct. 1979) (discussing the "elements of a cause of action for wrongful payment by an account debtor to an assignor after notice of an assignment" (emphasis added)); Ertel v. Radio Corp. of Am., 307 N.E. 2d 471, 473 (Ind. 1974) ("The account debtor's failure to pay the assignee after receiving due notification gives rise to an assignee's claim for wrongful payment." (emphasis added)); see also Porter Capital Corp. v. Haley (In re Haley), Bankr. No. 11-70573, 2013 WL 5592890, at

New York law support Durham's contention that an assignee of accounts receivable (i.e., Durham) may bring an action against an account debtor (i.e., SPS) to collect on those accounts where the account debtor had received notice of the assignment but nevertheless paid the assignor (i.e., CGAW). See, e.g., IIG Capital LLC v. Archipelago, L.L.C., 829 N.Y.S. 2d 10, 11-13 (N.Y. App. Div. 2007) (identifying plaintiff's causes of action as breach of contract and account stated) ("If, as alleged, defendants' accounts with MarketXT were assigned to plaintiff pursuant to the factoring agreement, and proper notice was given, defendants' payment in settlement to MarketXT would not be a defense to an action by plaintiff to collect on the accounts."); Hamilton Grp (Delaware), Inc. v. Cablevision Corp., 769 N.Y.S. 2d 425 (N.Y. App. Div. 2003) (finding that "the complaint states a cause of action" where plaintiff alleged that it had notified defendant that its account had been assigned to plaintiff and to direct payment to plaintiff's address but defendant had remitted payment to an address other than the address specified in the notice of assignment); Abrams & Co., Inc. v. ITS Equip. & Leasing Corp., 628 N.Y.S. 2d 784, 785 (N.Y. App. Div. 1995) (describing the claim as a "breach of an assignment") ("'Generally, after the account debtor receives notification that the right has been assigned and the assignee is to be paid, and it continues to pay the assignor, the account debtor is liable to the assignee and the fact that payment was made to the assignor is not a defense in an action brought by the assignee.'" (quoting Gen. Motors Acceptance Corp. v. Clifton-Fine Central Sch. Dist., 85 N.Y. 2d 232, 235-36 (N.Y. 1995) (describing action

---

*5, *9-11 (Bankr. N.D. Ala. 2013) aff'd 601 F. App'x 900, 910-11 & n.3 (11th Cir. 2015) ("The potential for double-payment liability is triggered under the statute only when the notice is effective." (emphasis added)); Allstate Fin. Corp. v. Dundee Mills, Inc., 800 F.2d 1073 (11th Cir. 1986) ("Although [the factor's] right to collect [the assigned] accounts receivable arose under the Uniform Commercial Code, O.C.G.A. § 11-9-318 (1982), common law equitable principles also apply to UCC transactions." (emphasis added)); see also id. at 1076 (holding that the factor had waived its right to payment and therefore "voluntarily relinquished its contractual and statutory right to receive and control these payments" (emphasis added).

as one for "breach of assignment")); Gen. Motors Acceptance Corp. v. Albany Water Bd., 590 N.Y.S. 2d 312 (N.Y. App. Div. 1992) ("'After notice of the transfer, however, the debtor is put on his guard, and if he pays the assignor any money which, under the assignment belongs to the assignee, or if he does anything prejudicial to the rights of the latter, he is liable for the resulting damage.'" (quoting Continental Purch. Co. v. Van Raalte Co., 295 N.Y.S. 867, 870 (N.Y. App. Div. 1937))).

Despite this line of authority and the history of this case, SPS argues that it "has no idea what the alleged New York common law duty is, how it allegedly breached it, and what damages, if any, Durham claims it has incurred as a result." See Motion at 8. At this stage in the proceedings, after extensive discovery, summary judgment briefing, the Court's ruling on summary judgment, as well as its Clarification Order, three status conferences, and the case law set forth above, the Court questions how SPS reasonably can suggest that it has "no idea" what Durham is claiming. Upon review of the allegations in the Amended Complaint, the Court finds that Durham has alleged sufficient facts to "'give [SPS] fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 551 U.S. at 93. Specifically, Durham has set forth specific factual allegations that (1) SPS had a duty to pay certain accounts arising out of CGAW's provision of professional services to SPS, (2) Durham purchased certain of those accounts from CGAW through the Factoring Agreement and notified SPS of the assignment, (3) SPS, having received the Notice of Assignment, owed the duty to pay the Purchased Accounts to Durham, (4) SPS breached that duty by paying CGAW and refusing to pay Durham, and (5) Durham is damaged in the amount that SPS paid to CGAW rather than Durham on the Purchased Accounts. Regardless of whether one titles this cause of action as a

violation of § 9-406, a breach of assignment, a wrongful payment, or a claim for accounts stated, it is a valid claim for relief under New York law.

Notably, in the Motion, SPS presents no argument or authority indicating that the foregoing New York cases are no longer valid law or do not apply to the facts of this case. Rather, SPS discounts the New York cases on which Durham relies because those cases "analyze actions under UCC §9-406 (or its predecessor statutory provision [§ 9-318(3)]) and New York's statutory adoption of same." See Motion at 7. As such, SPS's argument appears to be that Durham's purported common law claim is the equivalent of an independent claim brought under § 9-406, and that Durham's § 9-406 claim is invalid based on the reasoning in Forest Capital. While the Court agrees that Durham's "common law" claim and "statutory" claim are indistinguishable, the Court rejects SPS's contention that, based on Forest Capital, the Court should therefore dismiss this action in its entirety.

In Forest Capital, the Fourth Circuit, in an unpublished decision, held that "there is no private right of action for transfers made 'in violation of [sections 9-406] . . . of the UCC.'" See Forest Capital, 658 F. App'x at 682 (internal quotation omitted). The court reasoned that § 9-406 itself "imposes no obligations on the account debtor; whatever 'obligation' the account debtor may have is assumed to exist already." Id. at 680. As such, this provision "simply explains how to satisfy that obligation, providing a potential defense to an account debtor who has already paid the assignor or assignee." Id. Indeed, "the underlying purpose" of § 9-406 is "to clarify an account debtor's payment obligation when its debt is assigned." Id. Significantly, the Forest Capital Court explained that the law does not recognize § 9-406 as an independent cause of action because doing so

would "creat[e] rights out of nothing more than a notification and submit[] account debtors to obligations they never agreed to take on." See id. at 681. In support, the court cited Platinum Funding Servs., LLC v. Petco Insulation Co., Inc., No. 3:09cv1133 (MRK), 2011 WL 1743417 (D. Conn. 2011). In Platinum Funding, the court held that the plaintiff could not recover from the account debtor on its § 9-406 claim because the right to receive payment on the particular invoices at issue had never actually been assigned to the plaintiff. See Platinum Funding, 2011 WL 1743417, at *6, *9-10. The court rejected the assignee's contention that the notice of assignment alone entitled it to recover misdirected payments from the account debtor. See Platinum Funding, 2011 WL 1743417, at *1.

As is evident from the Court's Summary Judgment Order, the Court does not disagree with the specific reasoning in Forest Capital and Platinum Funding. See Summary Judgment Order at 32-33, 38-39 ("The effectiveness of a general notice of assignment simply cannot exist independent of an actual assignment of a particular account."). However, the conclusion in Forest Capital that § 9-406 is not an independent cause of action does not foreclose Durham's claim for relief under the facts at issue here.[10] In Forest Capital, as in Platinum Funding, the plaintiff's underlying legal theory

---

[10] The Court notes that in neither Forest Capital nor Platinum Funding did the plaintiff have an underlying claim for account stated. In Platinum Funding, the plaintiff conceded that it had not actually purchased the accounts at issue. See Platinum Funding, 2011 WL 1743417, at *6, *8. In Forest Capital, the plaintiff sought to recover based on what it characterized as a "payment intangible" obligation, not a payment on accounts. See Forest Capital, 658 F. App'x at 684. Indeed, a close examination of the facts of Forest Capital reveals that it concerned a factual scenario entirely distinct from Durham's action to collect on accounts here. Specifically, in Forest Capital the assignor was an energy service company, PP&G, who purchased energy from a third party on credit. As collateral for those purchases, the third party required PP&G to deposit funds into an investment account held in PP&G's name. Separately, PP&G sold its accounts receivable to the plaintiff, and gave plaintiff a security interest in substantially all of the company's assets. As such, to the extent the third party permitted any of the collateral funds in the investment account to be released back to PP&G, plaintiff claimed an entitlement to those disbursements. Although notified of this assignment, the firm which held the investment account, BlackRock, nonetheless paid the disbursements to PP&G. The plaintiff brought suit against BlackRock, as the purported account debtor. Notably, the parties disputed whether BlackRock's payment obligation actually constituted a "payment

was that the account debtor's liability arose out of its disregard of the notification letter and transfer of funds to the assignor. See Forest Capital, 658 F. App'x at 683 (finding that plaintiff had given no indication of pursuing a breach of contract claim, but rather had "insisted throughout the litigation that [the account debtor's] liability arose out of ignoring the notification letter and wrongfully transferring funds to [the assignor] . . . ."). The Forest Capital holding that § 9-406 is not an independent cause of action is a rejection of this specific theory, as that court explained: "[t]he effect of the notice [of assignment] is to defeat the account debtor's defense that it has satisfied the debt, not create a freestanding cause of action for disregarding the notice." Id. at 681 (emphasis added). Thus, if Durham's claim here was premised solely on SPS's failure to comply with the Notice of Assignment, then the analysis in Forest Capital would apply and Durham's claim would fail. Indeed, the matter would have been resolved at summary judgment when the Court rejected this theory of relief. See Summary Judgment Order at 39 ("To the extent that Durham contends it can establish its prima facie case without any evidence that the particular accounts at issue were assigned, based solely on SPS's receipt of the Notice of Assignment, Durham's contention is contrary to both law and common sense . . . .").

However, in this case, unlike in Forest Capital and Platinum Funding, Durham's claim under § 9-406 is premised on an underlying assignment of certain accounts receivable, the Purchased Accounts. As determined at summary judgment, reiterated in the Clarification Order, and remaining unchanged in the Amended Complaint, Durham's theory of liability is that, as the assignee of the Purchased Accounts, it is entitled under §

---

intangible" such that BlackRock could be considered an "account debtor" within the meaning of § 9-406, but the Fourth Circuit did not reach the issue. See id. at 679 n.3, 684.

9-406 to recover any payments SPS made to CGAW on those Accounts, following SPS's receipt of the Notice of Assignment. The Forest Capital decision does not break with the ample authority that a claim to collect on accounts, the right to payment on which has been legally assigned, is a viable claim. Indeed, Forest Capital recognized a right to recovery in such cases, citing with approval the IIG Capital LLC case where the assignee-factor brought analogous claims against an account debtor for breach of contract and account stated. See Forest Capital, 658 F. App'x at 681.[11] Thus, the flaw in Durham's pleading, its reliance on § 9-406 as an affirmative basis of liability, is merely an imperfect statement of the legal theory supporting its claim, and as such, SPS's request for dismissal of Durham's claim in its entirety on this basis is due to be denied.

The Court notes that in one conclusory sentence, SPS asserts, without explanation or citation to supporting authority, that: "[Section] 9-406 does not create a stand-alone obligation for SPS to pay Durham---and in fact, Durham has not pled such an obligation." See Motion at 11. However, to the extent SPS argues that dismissal is warranted because Durham has not actually pled an independent payment obligation, SPS offers no support for this argument and it is plainly unavailing. As stated above, Durham alleges

---

[11] The Court has also reviewed the additional cases, cited by SPS, which have followed the Forest Capital decision. See ARA, Inc. v. Waste Mgmt. Nat'l Servs., Inc., No. 17-159 (MJD/SER), 2017 WL 4857428 (D. Minn. Oct. 25, 2017) (dismissing UCC § 9-406 claim because the statute does not create a private right of action); Integrity Factoring & Consulting, Inc. v. Triple S Materials, L.P., No. 5:16-cv-885-DAE, 2017 WL 8020218 (W.D. Tex. Nov. 20, 2017) ("[The plaintiff's] pathway to recovery for damages resulting from the unpaid invoices therefore does not arise under Section 9.406, but rather lies within its claim for breach of contract or suit on account."); see also CapitalPlus Equity, LLC v. Glenn Rider, Inc., No. 17-CV-639-JPS, 2018 WL 276352 (E.D. Wis. Jan. 3, 2018) (denying summary judgment on the plaintiff-factor's breach of contract claim due to an issue of fact on whether accounts were sold to factor and explaining that "[t]his dispute is critical, as the notice [the factor] sent to [the account debtor] demanding payment would have no force or effect unless the accounts had actually been assigned to it"). Notably, although the courts in Ara and Integrity dismissed the § 9-406 claims, in both of those cases, the plaintiff had also asserted a claim for account stated. Presumably, either the dismissed § 9-406 claims were premised on the invalid theory that the plaintiff could recover based on a violation of the notice of assignment alone, or the statutory claims were redundant of the account stated claims.

that it purchased CGAW's accounts receivable, including those accounts arising out of professional services CGAW performed on behalf of SPS. Accepting such allegations as true, as the Court must in the current procedural posture of this case, those allegations are sufficient to demonstrate the existence of an underlying payment obligation, and Durham's entitlement to the same. SPS presents no argument or authority to suggest otherwise. In light of the foregoing, the Court concludes that Durham has alleged facts upon which relief can be granted, and as such, SPS's Motion is due to be denied.

In accordance with the foregoing, it is **ORDERED:**

1. Defendant Select Portfolio Servicing, Inc.'s Motion to Dismiss and/or Strike Plaintiff's First Amended Complaint (Doc. 217) is **DENIED**.

2. This case is set for a Telephonic Status Conference to address how to proceed in light of the Court's ruling. Counsel for the parties are directed to confer in good faith and be prepared to propose an expeditious schedule for completion of this action. The Telephonic Status Conference will take place on **Thursday, May 10, 2018, at 3:30 p.m.**, before the undersigned. The parties shall appear telephonically by calling toll free at 888-684-8852. The access code to enter the telephone conference for all participants is: 5822282. You will then be prompted to enter the participant security code: 2014 followed by the # (pound) key. This conference will be activated at 3:15 p.m. so the hearing may start promptly at 3:30 p.m.

**DONE AND ORDERED** in Jacksonville, Florida, this 1st day of May, 2018.

*MARCIA MORALES HOWARD*
United States District Judge

lc11
Copies to counsel of record